# In the United States Court of Federal Claims

No. 09-513 C

(Filed July 7, 2010)

**UNPUBLISHED**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * | | |
| DAVID WARD, | * | Military Pay Claim; RCFC 12(b)(1); |
| | * | Administrative Procedure Act, |
| *Plaintiff*, | * | 5 U.S.C. §§ 701-706 (2006); |
| | * | Military Pay Act, 37 U.S.C. § 204 |
| v. | * | (2006); 10 U.S.C. § 1552 (2006); |
| | * | Money-Mandating Source of Law; |
| THE UNITED STATES, | * | General Equitable Relief. |
| | * | |
| *Defendant*. | * | |
| * * * * * * * * * * * * * * * * * * * * * | | |

*Michael D.J. Eisenberg*, Washington, DC, for plaintiff.

*Daniel Rabinowitz*, United States Department of Justice, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Steven J. Gillingham*, Assistant Director, Washington, DC, for defendant. *Kelly L. McGovern*, Major, United States Army Military Personnel Branch, Army Litigation Division, Arlington, VA, of counsel.

---

## OPINION

---

**BUSH,** *Judge.*

Now pending before the court is defendant's motion to dismiss, which has been fully briefed and is ripe for a decision by the court. Because the court lacks subject matter jurisdiction over the claims raised in this case, the instant suit must

be dismissed pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC).

## BACKGROUND[1]

### I. Factual History

Between September 1971 and October 1973, plaintiff David Ward served in the United States Army (Army) as a cadet in the Reserve Officers' Training Corps (ROTC) while enrolled as a college student at Indiana University of Pennsylvania. Mr. Ward did not serve in the military between October 1973 and October 1984. In October 1984, however, Mr. Ward was commissioned as a reserve officer in the Army Judge Advocate General (JAG) Corps and served in that capacity until January 2009.

Because there was no official military documentation of his participation in ROTC, Mr. Ward's personnel file originally indicated that his date of initial entry into military service (DIEMS) was the date on which he was first commissioned as a reserve officer in the Army JAG Corps in October 1984. In May 2006, Mr. Ward filed an application with the Army Board for Correction of Military Records (ABCMR).[2] In that application, Mr. Ward requested that his DIEMS be changed from October 1984 to September 1971 to reflect his prior participation in ROTC. In support of his application, Mr. Ward supplied a copy of his college transcripts, which indicated his participation in the ROTC program. On January 9, 2007, the ABCMR granted Mr. Ward's request and ordered the correction of his military records to provide for a DIEMS of September 15, 1971.[3]

---

[1]/ The facts recounted here are taken from the complaint and Exhibit A to the motion to dismiss. The court has examined the parties' factual allegations for the limited purpose of determining whether it possesses subject matter jurisdiction over this case. The court does not reach the merits of plaintiff's claims in this opinion.

[2]/ The ABCMR is a civilian board within the Department of the Army that is authorized to make any changes to military records that are necessary to correct an error or cure an injustice. 10 U.S.C. § 1552 (2006).

[3]/ Plaintiff provides different dates for the ABCMR decision in his complaint and in his response to defendant's motion to dismiss. Although the response states that the decision was

(continued...)

In December 2008, the Army Physical Disability Agency (APDA) issued a report in which it determined that Mr. Ward was no longer fit for continued military service due to a combat-related medical disability.[4] In reaching that decision, APDA found that Mr. Ward suffered from post-traumatic stress disorder (PTSD) and injuries to his right knee and left ankle. Based on those injuries, APDA determined that Mr. Ward should be placed on the temporary disability retired list (TDRL) with an assigned disability rating of sixty percent.[5]

In determining whether Mr. Ward was eligible for tax-free retirement benefits, APDA made the following findings of fact:

> A. The soldier's retirement is based on disability from injury or disease received in the line of duty as a direct result of armed conflict or caused by an instrumentality of war and incurring in the line of duty during a period of war as defined by law.
>
> B. Evidence of record reflects that the soldier was not a member or obligated to become a member of an armed force or reserve thereof, or the NOAA or the USPHS on 24 September 1975.
>
> C. The disability did result from a combat related injury as defined in 26 U.S.C. [§] 104.

---

3/ (...continued)
rendered on March 8, 2007, Pl.'s Resp. at 6, that statement is supported with a citation to paragraph 13 of the complaint, which states that the decision was rendered on January 9, 2007. Compl. ¶ 13. In this opinion, the court has adopted the date set forth in the complaint.

4/ An extensive account of Mr. Ward's military service and medical disability is provided in the court's opinion in *Ward v. United States*, 89 Fed. Cl. 463, 465-73 (2009) (*Ward I*).

5/ Members of the military who are determined to be unfit for continued service by reason of a physical disability may be placed on the TDRL when the disability is likely to be permanent, but has not yet stabilized at the time of retirement. *See* 10 U.S.C. §§ 1202, 1205 (2006). Based upon the results of periodic medical examinations, members placed on the TDRL may be returned to military service, permanently retired with benefits, or separated from the military with severance pay.

Def.'s Mot. Ex. A at 4. Based on those predicate findings, APDA concluded that Mr. Ward's retirement benefits were not subject to federal income taxation.[6] Following its decision, APDA notified Mr. Ward that he would be placed on the TDRL effective January 16, 2009.

## II. Procedural History

In his complaint, plaintiff states that he seeks to correct an APDA decision so that the decision accurately sets forth his proper DIEMS, allowing him to be eligible for tax-free disability retirement benefits.[7] In that regard, plaintiff argues that the APDA decision was arbitrary and capricious because its finding that Mr. Ward was not a member of the military on September 24, 1975 was inconsistent with the DIEMS date of September 15, 1971 reflected in his corrected military records. Plaintiff asserts that this court has subject matter jurisdiction over his claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) (2006), the Military Pay Act, 37 U.S.C. § 204 (2006), and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706 (2006). In addition to his request that the court correct the APDA decision, plaintiff also seeks more than $10,000 in back pay and benefits, attorneys' fees and "such other relief as the Court deems just and proper." Compl.

---

[6]/ The general framework for the retirement and separation of military members based on physical disability is set forth in 10 U.S.C. §§ 1201-1222 (2006). Disability retirement benefits are eligible for tax-free status under the Internal Revenue Code as long as the retiree meets either of two independent criteria. First, a retiree who was a member of the armed forces, or was contractually obligated to become a member of the armed forces, on September 24, 1975 may exclude his disability retirement benefits from gross income for federal income tax purposes. *See* 26 U.S.C. § 104(b)(2)(B) (2006). Second, a retiree who receives disability retirement benefits by reason of a combat-related injury may similarly exclude such benefits from gross income for federal tax purposes. *See* 26 U.S.C. § 104(b)(2)(C) (2006). Importantly, disability retirement benefits are completely excluded from gross income if *either* of those requirements is met, and a retiree is not entitled to any additional tax or other benefits if he meets both of those criteria.

[7]/ Mr. Ward did not file an application with the ABCMR to correct any aspect of the APDA decision, and he was not required to do so before commencing suit in this court. *See Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003) (*en banc*) (noting that "the correction boards have been regarded as a permissive administrative remedy and . . . an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge").

¶ 27.

Defendant filed a motion to dismiss the complaint, in which the government argues that this suit should be dismissed pursuant to RCFC 12(b)(1) because Mr. Ward's claims are moot. According to defendant, the sole purpose of APDA's determination that plaintiff was not a member of the military on September 24, 1975 was to ascertain whether certain of his benefits could be excluded from gross income for purposes of federal income taxation. Although APDA found that Mr. Ward was not a member of the military on that date – and was therefore ineligible for tax-free retirement benefits on that basis – it further determined that Mr. Ward's placement on the TDRL was based upon a disability caused by injuries sustained in combat. That additional finding, according to defendant, provides an independent basis for tax-free benefits. In other words, plaintiff received precisely the same tax-free benefits he would have received had APDA determined that he was in fact a member of the military on September 24, 1975.

In the alternative, defendant argues that the instant suit should be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. First, the government disputes Mr. Ward's assertion that APDA determined that his DIEMS was later than September 24, 1975. According to defendant, APDA made no findings as to the date on which plaintiff first entered into military service; on the contrary, APDA simply determined that Mr. Ward was not a member, nor obligated to become a member, of the armed forces *on* September 24, 1975. Defendant notes that plaintiff does not claim that he was in fact a member of the military on that particular date, and the court observes that the complaint supports defendant's assertion. Compl. ¶ 6. The government agrees that Mr. Ward's DIEMS is September 15, 1971, and asserts that APDA's decision had no effect on that date. Defendant next argues that, contrary to Mr. Ward's assertions, the requested "correction" of the APDA report would not entitle him to any additional tax relief, back pay, or other monetary benefits. In other words, according to defendant, even if this court ordered APDA to find that plaintiff was a member of the military on September 24, 1975, that finding would not entitle plaintiff to any monetary relief.

In its response to the motion to dismiss, plaintiff first argues that he has a protected interest in accurate military records independent of any monetary benefits that might flow from the correction of those records. Plaintiff asserts that the court has jurisdiction to review APDA's decision under the APA, regardless of

whether setting aside that action would entitle him to any monetary relief. In addition, plaintiff further argues that any future change in the tax-exempt status of his benefits might be affected by APDA's finding that he was not a member of the armed forces on September 24, 1975. In response to the government's assertion that a contrary finding in the APDA decision would not entitle Mr. Ward to any back pay or other benefits, plaintiff points out that his complaint also requested "such other relief as the Court may deem just and proper." Pl.'s Resp. at 10 (quoting Compl. ¶ 27). Plaintiff further contends that defendant has mischaracterized the allegations contained in his complaint, explaining that he did not assert that APDA actually changed or altered the DIEMS in Mr. Ward's official military records; rather, the complaint merely alleges that the APDA decision was inconsistent with the earlier decision of the ABCMR. In closing, plaintiff requests that the court grant summary judgment in his favor.

In its reply, the government addresses a number of arguments presented in Mr. Ward's response. First, defendant argues that this court has no jurisdiction to set aside the APDA decision pursuant to the APA. The government notes that the APA is not a money-mandating statute, and contends that this court has no authority to order the correction of military records pursuant to that law. Second, the government challenges Mr. Ward's claim that the court may exercise subject matter jurisdiction in this case simply because his complaint included a request for "such other relief as the Court may deem just and proper." Defendant contends that any plaintiff in this court must assert an entitlement to monetary damages in its complaint and must identify some plausible legal basis for its asserted entitlement to that relief. Finally, the government states that the court should deny Mr. Ward's motion for summary judgment because he has failed to demonstrate that he is entitled to judgment as a matter of law.

## DISCUSSION

### I. Standard of Review under RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). The relevant issue in

a motion to dismiss under RCFC 12(b)(1) "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Patton v. United States*, 64 Fed. Cl. 768, 773 (2005) (quoting *Scheuer*, 416 U.S. at 236). The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v. United States*, 48 Fed. Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461-62 (Fed. Cir. 1998); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)), *aff'd in relevant part*, 281 F.3d 1376 (Fed. Cir. 2002). "Indeed, the court may, and often must, find facts on its own." *Id.* If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(b)(1).

## II. Analysis of Plaintiff's Claims

Defendant argues that Mr. Ward's suit must be dismissed for lack of subject matter jurisdiction because his claim is moot. In the alternative, defendant asserts that the suit must be dismissed for failure to state a claim upon which relief can be granted. For the reasons discussed below, the court concludes that it is without subject matter jurisdiction over the claims raised in the complaint because plaintiff has failed to make a nonfrivolous assertion that he is within the class of plaintiffs entitled to recover under any money-mandating source of law.

### A. Mootness

The government first argues that the instant case should be dismissed for lack of subject matter jurisdiction because the claims raised by Mr. Ward are moot. In support of that argument, defendant asserts that plaintiff was in no way harmed by the APDA decision because he is entitled to precisely the same tax-free benefits he would have received if the agency had found that Mr. Ward was in fact a member of the military on September 24, 1975.

Mootness is a threshold jurisdictional issue that must be resolved before proceeding to the merits of a case. *See Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (holding that "mootness . . . is a threshold jurisdictional issue"). Although the claims raised by plaintiff might be

characterized as "moot" in some sense (*i.e.*, defendant contends that resolution of this case in Mr. Ward's favor would not entitle him to any monetary damages), this suit does not appear to implicate the legal doctrine referred to as mootness. In general, a legal action is considered moot when, subsequent to the filing of the complaint, the relevant factual circumstances change such that there is no longer a justiciable case or controversy remaining for the court to adjudicate. *See, e.g.*, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (describing mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)") (citation and punctuation omitted).

Here, defendant does not claim that a change in circumstances has removed or mitigated the adverse impact of the APDA decision on plaintiff. Instead, defendant asserts that plaintiff had *never* been affected by the challenged governmental action in the first place. For that reason, the court does not believe that Mr. Ward's suit should be dismissed as moot. As discussed below, however, the court nonetheless concludes that it does not possess subject matter jurisdiction over the claims raised in the instant suit.

**B. Jurisdictional Basis of Suit**

"The Court of Federal Claims is a court of limited jurisdiction." *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1132 (Fed. Cir. 1998). In order to establish subject matter jurisdiction in this court, a plaintiff must demonstrate that the government has consented to suit and that there is a substantive legal basis for the claim. *See United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) ("Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity, . . . together with a claim falling within the terms of the waiver.") (citations omitted).

Mr. Ward first asserts that the court may exercise subject matter jurisdiction over his case under the Tucker Act, which provides in relevant part that the

> United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with

> the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Federal Circuit has explained that the Tucker Act "does two things: (1) it confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and (2) it waives the Government's sovereign immunity for those actions." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part). However, the statute "does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Id.* In addition, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *United States v. Mitchell*, 463 U.S. 206, 216 (1983). On the contrary,

> [t]he claim must be one for money damages against the United States, *see United States v. King*, 395 U.S. 1, 2-3 (1969), and the claimant must demonstrate that the source of substantive law he relies upon "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained."

*Id.* at 216-17 (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)) (footnote and quotations omitted). If the asserted constitutional, statutory or regulatory basis of a claim does not mandate the payment of money by the government, the court must dismiss the action because "the absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act." *Fisher*, 402 F.3d at 1173.

Mr. Ward's mere invocation of the Tucker Act and a money-mandating statute, however, is not sufficient to establish jurisdiction in this court; on the contrary, he must also advance a nonfrivolous assertion that he is within the class of plaintiffs who are entitled to recover under the money-mandating source of law. *See Jan's Helicopter Serv., Inc. v. United States*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) (holding that jurisdiction under the Tucker Act requires "a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source"); *Yant v. United States*, 85 Fed. Cl. 264, 269 n.4 (2009) (holding that the asserted money-mandating source must be

"reasonably amenable to the reading that the plaintiff is within the class entitled to recover if all elements of the cause of action are established").

In addition to the Tucker Act, plaintiff relies upon the APA, the Military Pay Act, and the statute authorizing the creation of military boards of correction as jurisdictional bases for his suit. In the circumstances of this case, none of the statutes cited by plaintiff constitutes a money-mandating source of law for purposes of the court's jurisdiction under the Tucker Act. For that reason, the court concludes that it lacks jurisdiction over the claims raised in the complaint.

**1. Administrative Procedure Act**

In both his complaint and in his response to defendant's motion to dismiss, plaintiff asserts that the court may exercise jurisdiction over his claim pursuant to the APA.[8] Mr. Ward's reliance on the APA is misplaced. First, any claim raised in this court under the Tucker Act must be based upon a money-mandating source of law, *see Testan*, 424 U.S. at 400 (noting that a suit in this court depends upon a substantive source of law that can be fairly interpreted as mandating the payment of monetary damages), and it is clear that the APA is not such a source, *see Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006) (holding that "the APA does not authorize an award of money damages at all"); *Banerjee v. United States*, 77 Fed. Cl. 522, 534 (2007) (holding that the APA "is not a money-mandating statute"). On the contrary, the express language of the APA emphasizes that its scope is limited to those challenges to agency action "seeking relief other than money damages . . . ." 5 U.S.C. § 702.

The APA, moreover, authorizes judicial review of final agency decisions not by this court, but by *federal district courts*. *See Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) (noting that federal district courts may review agency action under the APA pursuant to their general federal question jurisdiction); *Russell v. United States*, 78 Fed. Cl. 281, 288 (2007) (noting that "the APA confers

---

[8]/ In his response to the government's motion to dismiss the complaint, Mr. Ward references the APA and provides a citation to a statute that does not exist. *See* Pl.'s Resp. at 8 (citing to 28 U.S.C. § 500). The court assumes that plaintiff intended to cite 5 U.S.C. § 500 (2006). Although 5 U.S.C. § 500 is a part of the APA, the relevant provisions governing judicial review of agency decisions are contained in 5 U.S.C. §§ 701-706 (2006). Plaintiff correctly cites those sections of the APA in his complaint. Compl. ¶ 23.

jurisdiction for judicial review of final agency decisions on the United States district court and not the Court of Federal Claims"); *McNabb v. United States*, 54 Fed. Cl. 759, 767 (2002) (holding that "APA reviews are conducted in federal district court rather than the Court of Federal Claims"). This court does not possess subject matter jurisdiction to review agency action pursuant to the APA. *See Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005) ("Of course, no APA review is available in the Court of Federal Claims."); *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (affirming that this court "lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act"); *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993) (noting that "the Claims Court has no authority to invoke the APA"). In short, the APA cannot provide the jurisdictional basis for Mr. Ward's claims in this case.[9]

### 2. Military Pay Act

Plaintiff also asserts that he is entitled to relief under the Military Pay Act, which provides, in relevant part, that active-duty members of a uniformed service are entitled to the basic pay and allowances of the pay grade to which they are assigned. 37 U.S.C. § 204(a) (2006). Although plaintiff seeks to invoke the Military Pay Act as a source of jurisdiction in this case, he does not explain the basis of his asserted claim of entitlement under that statute. It is true that, under certain circumstances, the Military Pay Act may serve as a money-mandating source of law for purposes of establishing the court's jurisdiction under the Tucker

---

9/ Defendant points out that counsel for plaintiff has sought to invoke the APA as an independent source of jurisdiction in a number of other cases before this court, and that the court has held in each of those cases that it has no jurisdiction under the APA. Def.'s Reply at 2 n.1. The court reminds counsel for plaintiff that, pursuant to the court's rules, all pleadings, written motions and other papers filed in this court contain an implicit certification that "to the best of [counsel's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law . . . ." RCFC 11(b). The Federal Circuit has consistently held that this court does not have jurisdiction over claims based upon the APA, *see, e.g.*, *Lion Raisins*, 416 F.3d at 1370 n.11, and that holding is binding on this court. The court trusts that counsel for plaintiff is now very clearly on notice that any future claims in this court based upon the APA as an independent source of jurisdiction are not warranted by existing law.

Act. *See, e.g.*, *Smith v. Sec'y of the Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004) ("It is well established that the Military Pay Act is a money-mandating statute."); *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) ("It is well-established that 37 U.S.C. § 204 . . . serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge."). Although the Military Pay Act may serve as a money-mandating source of law, simply pointing to that statute does not establish subject matter jurisdiction in this court. In order to survive a motion to dismiss under RCFC 12(b)(1), Mr. Ward must also advance a nonfrivolous assertion that he is within the class of plaintiffs entitled to recover under the statute. *See Jan's Helicopter Service*, 525 F.3d at 1307.

Under the Military Pay Act, a commissioned officer serving on active duty is entitled to the basic pay and applicable allowances of the rank and pay grade to which he is assigned until he is properly separated from the service. *See Holley*, 124 F.3d at 1465 ("If the discharge was wrongful the statutory right to pay [under section 204] continues; this right serves as the basis for Tucker Act jurisdiction."); *Sanders v. United States*, 594 F.2d 804, 810 (Ct. Cl. 1979) (holding that section 204 "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service"). For that reason, members of the armed forces who are improperly discharged from active duty may seek relief in this court pursuant to the Military Pay Act. *See Martinez*, 333 F.3d at 1303 ("In order to bring a military discharge case in the Court of Federal Claims, a plaintiff therefore must allege that, because of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge."). As discussed below, since Mr. Ward has failed to claim damages and ancillary relief for wrongful discharge, he has therefore failed to advance a nonfrivolous assertion that he is within the class of plaintiffs entitled to recover under the statute.

First, plaintiff does not claim that his retirement was involuntary. Indeed, Mr. Ward affirmatively concurred in his administrative placement on the TDRL. *See* Def.'s Mot. Ex. 1 at 5. In other words, the instant suit does not fall within that class of cases under the Military Pay Act in which an active-duty member of the military is involuntarily discharged and seeks reinstatement and back pay for the period during which he was wrongfully separated from the service. *See, e.g.*, *Metz v. United States*, 466 F.3d 991, 1000 (Fed. Cir. 2006) (holding that an involuntary separation is a "necessary predicate" to a claim for monetary damages under the

Military Pay Act); *Smith*, 384 F.3d at 1295 ("[I]f the service member's separation from the service is voluntary, . . . the Military Pay Act does not impose on the government any continuing obligation to pay the service member. For that reason, this court has repeatedly held that relief under the Tucker Act is not available in the typical military promotion case if the service member voluntarily left the service."). Because plaintiff does not allege that his retirement was involuntary, he is not within the class of plaintiffs entitled to recover wrongful discharge damages under the Military Pay Act.

Second, plaintiff has not alleged that he was serving on active duty at the time of his placement on the TDRL. Unlike active-duty military personnel who are entitled to basic pay pursuant to section 204(a), members of a military reserve component who are not serving on active duty are entitled to pay and allowances only for drills that are actually attended and training that is actually performed. *See* 37 U.S.C. § 206(a) (2006) (providing that members of a reserve component or the National Guard are entitled to claim pay only for drills and training actually performed); *Martinez*, 333 F.3d at 1310 n.3 ("Service members on active duty are entitled to basic pay pursuant to 37 U.S.C. § 204(a), while reservists are paid only for the drills and training they actually attend . . . ."); *Palmer v. United States*, 168 F.3d 1310, 1314 (Fed. Cir. 1999) ("The consequence of this difference in pay entitlement between full-time active duty personnel and those serving part-time reserve duty is that a member who is serving in part-time reserve duty in a pay billet, or was wrongfully removed from one, has no lawful pay claim against the United States for unattended drills or for unperformed training duty."). Because plaintiff does not assert that he was serving on active duty and therefore entitled to basic pay at the time of his placement on the TDRL, he is not within the class of plaintiffs entitled to recover active-duty back pay under the Military Pay Act. *See Martinez*, 333 F.3d at 1310 n.3 (holding that a service member's "suit for back pay is limited to the basic pay he would have received had he remained on active duty, because he would not be entitled to a pay remedy for improper discharge from the Reserves").

Mr. Ward does not seek reinstatement of his position, nor does he seek the basic pay of his grade at the time of retirement. On the contrary, plaintiff seeks to challenge an agency decision that relates only to his eligibility for tax-free disability retirement benefits. Such a claim does not fall within the parameters of relief offered by section 204. *See Ancman v. United States*, 77 Fed. Cl. 368, 374-75 (2007) (holding that two retired military officers were not entitled to relief

under section 204 because they sought an adjustment of retirement benefits, rather than reinstatement of their positions or an entitlement to basic pay). Although the Military Pay Act has been treated as a money-mandating source of law in certain circumstances previously outlined, plaintiff has failed to advance a nonfrivolous assertion that he is within the class of plaintiffs entitled to recover under that statute. In short, the court's jurisdiction over Mr. Ward's suit must be based, if at all, upon some other money-mandating source of law.

### 3. Correction Board Statute

In his response to defendant's motion to dismiss, plaintiff also asserts that he possesses a protected interest in the accuracy of his military records pursuant to the provisions of 10 U.S.C. § 1552 (2006). The Federal Circuit has explained that section 1552 may be considered money-mandating only to the extent that the requested correction of military records would automatically entitle a claimant to monetary relief under the Military Pay Act or some other money-mandating source of law:

> Section 1552 is "money-mandating" in the sense that it requires that the government grant monetary relief to a service member if the correction board determines that the service member's record should be corrected in a way that entitles the service member to back pay. But section 1552 is not the source of the right to back pay; that right comes from a different statute, such as the Military Pay Act, 37 U.S.C. § 204. Accordingly, even though section 1552 mandates the payment of money if the correction board concludes that the service member's discharge was unlawful, section 1552 is not the "money-mandating" statute that gives rise to the cause of action that provides the basis for a Tucker Act suit in the Court of Federal Claims.

*Martinez*, 333 F.3d at 1314-15 (citations and footnote omitted). As noted above, Mr. Ward's claims do not fall within any category of relief contemplated or offered under the Military Pay Act. In the absence of such an entitlement, section 1552 cannot be viewed as a money-mandating source of law for the purpose of establishing the court's jurisdiction under the Tucker Act. *See Flowers v. United*

*States*, 80 Fed. Cl. 201, 222 (2008) ("Without an ability to award plaintiff money damages, the court is unable to 'complete the relief afforded by the judgment' by correcting his military records because such equitable relief is not 'an incident of and collateral to' a monetary award.") (citation omitted).

**C. Request for Equitable Relief**

As discussed above, Mr. Ward has failed to make a nonfrivolous assertion that he is within the class of plaintiffs entitled to recover under any applicable money-mandating source of law. In fact, plaintiff appears to concede in his response to the motion to dismiss that the requested correction of the APDA report would not entitle him to any presently due payment from the government.[10] However, Mr. Ward asserts that he has a protected interest in accurate military records, regardless of whether the correction of his records would entitle him to any monetary benefits. *See* Pl.'s Resp. at 9 (asserting that plaintiff "possesses a recognized and valid interest in maintaining correct military records which is wholly separate from his interest in tax-exempt retirement pay"). That assertion is incorrect.

It is well-settled that this court has no general authority to grant equitable relief. *See, e.g., Doe v. United States*, 372 F.3d 1308, 1313 (Fed. Cir. 2004) (explaining that "the Court of Federal Claims . . . does not have general equitable

---

[10]/ Plaintiff asserts that, even if he is not presently entitled to any payments from the government, the APDA decision could nonetheless have a future impact on the monetary benefits to which he is entitled. Mr. Ward asserts that if his "tax-status, based on Defendant's noted meaning of tax-free status, is ever changed, the DIEMS status would then apply and ensure Plaintiff receives his tax-free benefits." Pl.'s Resp. at 9. In other words, plaintiff appears to argue that his disability retirement benefits could lose their tax-free status if the government later determines that Mr. Ward's disability is not in fact the result of injuries sustained in combat or subsequently amends the Internal Revenue Code in a way that would affect the tax status of his benefits. The court cannot, however, award equitable relief that is wholly independent of any present entitlement to monetary damages based solely on the uncertain possibility that some future action on the part of the government might entitle him to money in the future. If some subsequent governmental action reduces the benefits to which plaintiff believes he is entitled, that action must be challenged when it occurs. *See Jankovic v. United States*, 204 Ct. Cl. 807 (1974) ("This Court does not have jurisdiction since plaintiff is not asking for money presently due him from the United States. If the cause of action ever accrues, it will do so only when plaintiff is presently entitled to retirement benefits.") (citations omitted).

powers"); *Martinez*, 333 F.3d at 1303 (noting that "the Court of Federal Claims does not have general equity jurisdiction"). The court's ability to grant such relief is limited to two narrow areas. First, in exercising its bid-protest jurisdiction, the court may award any declaratory or injunctive relief it deems to be proper pursuant to 28 U.S.C. § 1491(b)(2) (2006). Second, the Tucker Act also states that

> [t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

28 U.S.C. § 1491(a)(2).

Section 1491(a)(2) provides the legal basis for the court's authority to reinstate military personnel and federal employees who have been wrongfully discharged, *see Yee v. United States*, 512 F.2d 1383, 1388 (Ct. Cl. 1975) (ordering the reinstatement of an unlawfully discharged officer pursuant to section 1491(a)(2)), and likewise provides the authority to order the correction of military records, *see Williams v. United States*, 91 Fed. Cl. 560, 564 n.7 (2010) (noting that this court may order the correction of military records pursuant to section 1491(a)(2)). However, the court's power to award equitable relief pursuant to that provision is expressly limited to relief that is "an incident of and collateral to" an award of money damages. *See Upshaw v. United States*, 17 Cl. Ct. 732, 735 (1989) ("It is firmly established . . . that the Claims Court's power to order correction of military records under [section 1491(a)(2)] is confined to those cases in which such relief would be 'incident of and collateral to' the award of a money judgment.") (citation omitted).

Because plaintiff has failed to advance a nonfrivolous assertion that he is within the class of plaintiffs entitled to recovery under any money-mandating source of law, the equitable relief he has requested would not be incidental or subordinate to a money judgment. The court concludes that it is without subject matter jurisdiction over Mr. Ward's suit. For that reason, defendant's motion to

dismiss the complaint pursuant to RCFC 12(b)(1) must be granted.[11]

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss, filed December 2, 2009, is **GRANTED**;

(2) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint without prejudice; and

(3) Each party shall bear its own costs.

/s/Lynn J. Bush
LYNN J. BUSH
Judge

[11]/ In his response to the government's motion to dismiss, Mr. Ward moved for summary judgment in his favor. Because the court holds that it does not possess subject matter jurisdiction over the instant suit, the court cannot address Mr. Ward's motion for summary judgment on the merits.